522 A.2d 647

James I. AMMON, Appellant,

v.

ARNOLD PONTIAC–GMC, INC.

v.

Kurt R. SCHUSSLER.

James I. AMMON

v.

ARNOLD PONTIAC–GMC, INC.

v.

Kurt R. SCHUSSLER, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 30, 1986.

Filed March 13, 1987.

410

Paul A. Tershel, Assistant Public Defender, McMurray, for appellant (at 687) and appellee (at 698).

Stephen P. McCloskey, Washington, for appellant (at 698) and appellee (at 687).

Allan M. Cox, Pittsburgh, for Arnold, appellee.

Before WICKERSHAM *, BROSKY and JOHNSON, JJ.

JOHNSON, Judge:

This case involves an automobile accident in which 17 year old Ammon was a passenger in an automobile operated by Schussler. The automobile collided with a truck which an employee of Arnold Pontiac had parked in the street. Ammon sustained injuries in the accident and executed a release in consideration for payment from Schussler's insurance company. Ammon brought suit against Arnold Pontiac-GMC, Inc., which joined Schussler as an additional defendant. Following a jury trial Ammon was awarded $325,000 in damages. The jury attributed 40% of the causal negligence to Arnold Pontiac and 60% to Schussler.

Following post-verdict motions, the court of common pleas en banc on February 8, 1985, ordered a new trial on the issue of damages unless Ammon filed a remittitur with the prothonotary for any amount in excess of $60,000. Ammon appealed to the Superior Court on the excessiveness of verdict issue. Arnold cross-appealed regarding

* This decision was reached prior to the resignation of Wickersham, J.

liability issues. Among other things, the Superior Court remanded the case to the trial court to determine the effect of a release which Ammon had executed. The trial court determined that the release did not bar recovery because Schussler and Arnold had effected a waiver of the release. The court directed the prothonotary to enter judgment in favor of Ammon in accordance with the February 8, 1985 order.

Ammon, Arnold and Schussler appeal to this Court. Subsequent to the filing of the appeal Arnold entered a settlement with Ammon and Arnold's appeals were discontinued.

Two issues remain for our review:

I. A. IS THE CONSIDERATION OF PRE–TRIAL SETTLEMENT OFFERS IMPERMISSABLE IN DETERMINING WHETHER A VERDICT IS EXCESSIVE?

B. DID THE TRIAL COURT RELY UPON OTHER IMPROPER CONSIDERATIONS IN ITS DETERMINATION OF WHETHER THE VERDICT IS EXCESSIVE?

II. DID THE TRIAL COURT ERR: (1) BY FAILING TO FULLY ADDRESS THE ISSUE OF WHETHER THE RELEASE BARRED RECOVERY IN WHOLE OR IN PART AGAINST ARNOLD PONTIAC–GMC, INC. (2) BY FAILING TO FULLY DETERMINE THE LEGAL EFFECT OF THE RELEASE IN THAT IT FAILED TO DETERMINE WHAT TYPE OF JOINT TORTFEASOR RELEASE WAS ENTERED INTO BY THE PLAINTIFF AND (3) BY RULING THAT THE APPELLEES ABANDONED OR WAIVED THE DEFENSE OF RELEASE?

In the first issue, Ammon argues that the lower court erred by relying on pre-settlement offers in finding the jury verdict to be excessive. In the opinion which accompanied the February 8, 1985 order, the court of common pleas en banc reviewed the jury verdict of $325,000 and ordered a new trial on the issue of damages alone unless Ammon filed a remittitur with the prothonotary for any amount in excess

of $60,000. We have reviewed that opinion and the applicable case law and find that the lower court improperly applied the law of this Commonwealth to the facts of this case. We accordingly reverse the trial court's February 8, 1985 order and reinstate the jury verdict.

■ We commence our discussion by recognizing that "the granting or refusal of a new trial because of excessiveness is peculiarly within the discretion of the court below and we will not interfere, absent a clear abuse of discretion." *Robert v. Chodoff*, 259 Pa.Super. 332, 366, 393 A.2d 853, 871 (1978). A verdict will not be held to be excessive unless the excessive size of the verdict shocks the court's sense of justice. *Id.* In *Chodoff, id.,* this Court listed six factors which are considered in determining whether a particular verdict is excessive:

> (1) the severity of the injury, (2) whether plaintiff's injury is manifested by objective physical evidence instead of merely the subjective testimony of the plaintiff, (3) whether the injury will effect the plaintiff permanently, (4) whether the plaintiff can continue with his employment, (5) the size of plaintiff's out-of-pocket expenses, and (6) the amount plaintiff demanded in the original complaint.

*Chodoff,* 259 Pa.Super. at 367, 393 A.2d at 871 (*citing Kemp v. Philadelphia Transportation Co.,* 239 Pa.Super. 379, 361 A.2d 362 (1976)). The trial court applied these factors in its February 8 opinion in reaching its conclusion that the verdict was excessive. We disagree with its application of factors four, five and six.

■ The fourth *Chodoff* factor is whether the plaintiff can continue with his employment. Ammon did not seek to recover for lost earnings, lost wages or loss of future earning capacity. In *Feld v. Merriam*, 314 Pa.Super. 414, 461 A.2d 225 (1983), *rev'd on other grounds,* 506 Pa. 383, 485 A.2d 742 (1984), this Court was confronted with a case in which plaintiffs had not sought damages for lost wages and the jury was not instructed to consider them in arriving at a damage figure. This Court found consideration of the

fourth *Chodoff* factor to be irrelevant to a determination of excessiveness, since the plaintiffs had not sought to recover lost wages.

Ammon similarly did not seek recovery for lost wages. The trial court, however, discussed the fourth *Chodoff* factor and concluded that lost earnings and lost earning capacity could not be considered as a basis which would support the jury's verdict. Since Ammon had not sought recovery for these items the fourth *Chodoff* factor is irrelevant and the trial court should not have discussed it.

■ The fifth factor under the *Chodoff* analysis is the size of plaintiff's out-of-pocket expenses. Under the No-fault Act,[1] which was applicable to the accident in this case, the medical expenses were not presented to the jury. The trial court, however, considered Ammon's loss of a wrestling scholarship to the University of Kentucky as an "out-of-pocket expense." The court compared the $14,500 maximum value of the scholarship with the amount of the verdict. The court concluded that when that disparity was considered along with the other factors the verdict had to be set aside. We believe the court should not have even applied the fifth factor to the facts of this case. The No-fault Act prevented Ammon from introducing evidence of his medical expenses. These would have been the bulk of his out-of-pocket expenses. Absent these expenses, a comparison of the value of the lost scholarship to the size of the verdict will necessarily evidence a disparity, since the bulk of his out-of-pocket expenses are not being considered. Where the law prevents the introduction of evidence of out-of-pocket expenses, the fifth *Chodoff* factor is irrelevant and thus it should not have been considered by the trial court.

■ The sixth and final *Chodoff* factor is the amount plaintiff demanded in the original complaint. We noted in *Feld v. Merriam, supra,* that the Pennsylvania Rules of Civil Procedure prohibit a plantiff who is seeking unliqui-

1. Act of July 19, 1974, P.L. 489, No. 176, § 101 *et seq.,* 40 P.S. § 1009.101 *et seq.* (repealed 1984).

dated damages from demanding a specific sum of money. Such a plaintiff may only set forth whether the amount is or is not in excess of $10,000. Pa.R.C.P. 1021(b). Thus, as were the plaintiffs in *Feld*, Ammon was prohibited from demanding a specific amount of damages. The sixth *Chodoff* factor is then inapplicable to the facts of this case. The court should not have discussed it, or applied it.

■ During the court's discussion of the amount claimed in the complaint, the court made explicit reference to the demands which Ammon made during settlement discussions. The court stated "The plaintiff claimed damages in excess of $10,000; at settlement discussions on the morning of trial the plaintiff's demand ranged from $8,000 to $12,000. The disparity between these figures and the verdict amount is self-evident." Opinion, 2/8/85 at 9. It has long been established that an offer to compromise a claim, not accepted, cannot be introduced into evidence. *Durant v. McKelvey*, 187 Pa.Super. 461, 144 A.2d 527 (1958). Not only is settlement without litigation to be encouraged, but offers to compromise are not, in and of themselves, admissions of liability. *Smith v. Leflore*, 293 Pa.Super. 149, 437 A.2d 1250 (1981). To consider such a factor when determining the possible excessiveness of a verdict discourages the settlement of disputes. Plaintiffs will be dissuaded from making conservative settlement demands if they know that such demands will be used against them at a later stage in the proceedings. Of equal importance, it is entirely inappropriate to review a jury verdict based upon facts which, as a matter of law, were barred from jury consideration. The court should not have made reference to or considered Ammon's settlement demands.

When we view the court's consideration of inadmissable settlement demands together with its improper consideration of the three final *Chodoff* factors, we conclude that the court has abused its discretion. Where the extent of consideration of irrelevant factors, coupled with inadmissable facts, is as substantial as appears in this case, this Court can only conclude that the trial court has lost its ability to

assess the jury award consistent with established Pennsylvania law. On a motion for remittitur the court may only look to those *Chodoff* factors which reasonably would have been before the jury prior to the time they entered the verdict. Any other approach or analysis results in a reviewing tribunal improperly interfering with the jury function.

We have reviewed the trial transcript at length, including the testimony of Ammon, Dr. Imbriglia and the other witnesses. We find that the evidence supports the verdict. The evidence establishes that Ammon suffered severe injuries as a rear-seat passenger in the accident at the basis of this suit. After the car in which he was riding collided with a parked truck Ammon was knocked unconscious and was covered with blood. When his father was called to the scene of the accident, Ammon was in such a condition that his father thought Ammon was dead. In fact, Ammon's left hand was crushed in the accident. Various bones in the hand were broken and displaced. After the hand was initially set, using stainless steel pins to hold the bones in place, Ammon underwent surgery two additional times in an attempt to regain complete use of the hand. Even following the surgery and physical therapy Ammon lost 10% of the motion in the hand. At the time of trial the hand not only was scarred but was a source of continuing physical pain and embarrassment to Ammon.

In addition to the severe hand injury, Ammon suffered seven broken ribs, a broken collar bone, lacerations to his shoulder and above his eye and a concussion. Initially, Ammon was in pain with every breath, and was given extensive pain medication during his initial hospital stay. The extensive injuries which Ammon sustained had a significant impact on Ammon's life. We cannot say that with such evidence before the jury, a verdict of $325,000 was excessive. Nothing in the record suggests, nor has the trial court shown, that the jury was in any way guided by partiality, prejudice, mistake or corruption. *Daley v. John Wanamaker, Inc.*, 317 Pa.Super. 348, 464 A.2d 355 (1983). Accordingly, we reverse the order of February 8, 1985. We

reinstate the jury's verdict, and remand for proceedings consistent with this opinion.

In Schussler's appeal he contends that the trial court ruled improperly on the release issue. Ammon allegedly entered into a release with Schussler prior to commencement of this lawsuit. Schussler asserts that Schussler's insurance company paid Ammon $14,000 in consideration for Ammon executing a release. After suit was commenced both Arnold and Schussler raised the release as a defense and filed motions for judgment on the pleadings. The lower court did not rule on the motions and the case later proceeded to trial. In post-trial motions Arnold and Schussler raised, among other issues, the effect of the release. The lower court granted a new trial on the excessiveness of verdict issue but did not rule on the release issue because Ammon had commenced a separate equity action after trial to reform the release. Appeal was taken to the Superior Court, which remanded the case to the trial court to determine the legal effect of the release. The trial court held that the release did not bar recovery. The court entered judgment in favor of Ammon in accordance with the February 8, 1985 order which granted a new trial on damages.

The trial court's rationale for finding that the release does not bar recovery is that defendants waived the defense by failing to properly raise the issue at trial. The court explained that:

> from the time of the argument on the motion for judgment on the pleadings in 1983, to a time after the verdict, the defendants did none of the following: (1) They did not offer the release into the record; (2) they did not request the court to make a determination of the validity of the release, or of its effect in the case; (3) they did not, even during settlement negotiations immediately before trial, ask the court to interpret the release.

Opinion, 4/18/86 at 4. The court concluded that "It is disingenuous for the defendants to come forward after the

verdict and protest vehemently that there is a general release, the effect of which is to discharge all defendants." Opinion 4/18/86 at 4. We agree.

A trial court en banc may not give relief on post-verdict motions when such relief was not requested during trial. *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981). It was incumbent upon Schussler to pursue further relief after no ruling was made on his motion for judgment on the pleadings. For him to allow the entire trial to pass, without again raising the complete defense of general release until post-verdict motions, results in the waiver of the defense.

In his brief Schussler argues that the defense of settlement and release was not waived because a joint tortfeasor release may not be admitted into evidence at trial. Schussler directs this Court's attention to 42 Pa.C.S. § 6141 and *Weingrad v. Philadelphia Electric Co.*, 324 Pa.Super. 16, 471 A.2d 100 (1984). The statute upon which Schussler relies, as well as the *Weingrad* case which interprets it, provide that when a settlement and release regarding personal injuries or property damages have not been pleaded as a complete defense, then they are not admissible at trial. Here the additional defendant Schussler alleged in Paragraph 4 of his Answer and New Matter that the release was a general release barring action against him. As such the case law and statute relied upon by Schussler did not prevent the admission at trial of evidence of the release. We find Schussler's arguments to be without merit and affirm that portion of the April 18, 1986 order which finds that the release did not bar recovery.

We reverse the order of February 8, 1985 which granted a new trial on the issue of damages unless plaintiff were to have filed a remittitur and reinstate the jury verdict.

We affirm so much of the April 18, 1986 order as held that the release did not bar recovery. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.